UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KATHERINE B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:17-cv-04633-RLY-MJD |
| ) | |
| NANCY A. BERRYHILL, ) | |
| ACTING COMMISSIONER, ) | |
| SOCIAL SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

Katherine B. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* U.S.C. §§ 416(i), 423(d), 1382c(a)(3)(A) (2018). For the reasons set forth below, the Magistrate Judge recommends that the District Judge **AFFIRM** the decision of the Commissioner.

### I. Background

Katherine B. filed an application for SSI on August 28, 2015, alleging an onset of disability on December 16, 2014. [Dkt. 7-2 at 11.] Katherine B. alleges disability due to chronic myeloid leukemia, cervicalgia, degenerative joint disease, osteoporosis, osteoarthritis, chronic obstructive pulmonary disease (COPD), anxiety, back pain, wrist pain, agoraphobia, head

1

trauma, lumbosacral and cervical spondylosis, and chronic pain syndrome.[1] [Dkt. 9 at 2.] Plaintiff's claim was initially denied on July 27, 2016, and denied again on December 7, 2016, upon reconsideration. [Dkt. 7-2 at 11.] Plaintiff timely filed a written request for a hearing on February 6, 2017. [Dkt. 7-2 at 11.] The hearing was held on April 20, 2017, before Administrative Law Judge Jody Hilger Odell ("ALJ"). [Dkt. 7-2 at 11.] The ALJ issued a decision on June 13, 2017, again denying Plaintiff's application for SSI. [Dkt. 7-2 at 21.] On October 18, 2017 the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision for purposes of judicial review. [Dkt. 1 at 1.] Katherine B. timely filed her Complaint with this Court on December 15, 2017, which Complaint is now before the Court. [*See* Dkt. 1.]

## II.  Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2018).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful

---

[1] Katherine B. and the Commissioner recited the relevant factual and medical background in more detail in their opening briefs. [*See* Dkt. 9 and Dkt. 11.] Because these facts involve Katherine B's confidential and otherwise sensitive medical information, the Court will incorporate the factual background in the parties' briefs but will articulate specific facts as needed below.

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

2

activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three and cannot perform her past relevant work but she can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520 (2018). Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

       The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant

evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into [her] reasoning" and "build an accurate and logical bridge from the evidence to [her] conclusion." *Dixon*, 270 F.3d at 1176.

### III.  The ALJ's Decision

The ALJ first determined that Katherine B. has not engaged in substantial gainful activity since August 28, 2015, the application date. [Dkt. 7-2 at 14-15.] At step two, the ALJ determined that Katherine B. "has the following severe impairments: degenerative disc disease; COPD; residual deformity of the left wrist; chronic myelogenous leukemia." [Dkt. 7-2 at 14.] However, at step three, the ALJ found that Katherine B. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." [Dkt. 7-2 at 15-16.]

In making this determination, the ALJ considered Listing 1.02 for Plaintiff's wrist deformity but found that the medical evidence did not support all criteria for major dysfunction of a joint under that listing. [Dkt. 7-2 at 16.] The ALJ next considered Plaintiff's degenerative disc disease under Listing 1.04 but found that the medical evidence did not support all criteria for disorders of the spine under that listing. [Dkt. 7-2 at 16.] The ALJ then considered the Plaintiff's COPD under Listing 3.02 but found that the medical evidence did not support all criteria for chronic respiratory disorders; additionally, "there [was] no indication in the evidence of the record the claimant has sustained exacerbations requiring three hospitalizations within a 12-month period, and at least 30 days apart, lasting at least 48 hours as defined in subsection D."

4

[Dkt. 7-2 at 16.] Lastly, the ALJ considered Plaintiff's chronic myelogenous leukemia under Listing 13.06 but found Katherine B.'s condition had no indication of being "progressive" or in an "accelerated or blast phase, or chronic phase as described." [Dkt. 7-2 at 16.] The ALJ found the Plaintiff had been "somewhat noncompliant with anticancer therapies" and was "responding to prescribed regimen without significant side effects." [Dkt. 7-2 at 16.] Therefore, the ALJ concluded the criteria of Listing 13.06 for leukemia was not met. [Dkt. 7-2 at 16.]

The ALJ next analyzed Katherine B.'s residual functional capacity ("RFC"). She concluded that Katherine B. has the RFC to perform light work except:

> [S]he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds, no exposure to respiratory irritants such as concentrated fumes, odors, dusts, or gases; no exposure to unprotected heights or dangerous moving machinery; no operation of motor vehicles; and frequent handling/fingering.

[Dkt. 7-2 at 16.]

In finding these limitations, the ALJ considered "symptoms and the extent to which symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [Dkt. 7-2 at 16.] The ALJ then acknowledged that the evidence presented could reasonably show that Katherine B. suffers from the symptoms she alleges but found that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [Dkt. 7-2 at 17.] At step four, the ALJ concluded that Katherine B. is "unable to perform any past relevant work." [Dkt. 7-2 at 19.] The ALJ proceeded to step five, at which time she received testimony from the vocational expert ("VE") indicating that someone with Plaintiff's age, education, work experience, and RFC would be able to perform unskilled light occupations such as office

machine operator, electronic assembler, or sales attendant. [Dkt. 7-2 at 20-21.] Because these jobs existed in significant numbers in the national economy, the ALJ concluded that Katherine B. was not disabled. [Dkt. 7-2 at 20-21.]

## IV. Discussion

Katherine B. asserts the ALJ committed two errors that require reversal and remand of the Commissioner's decision for further proceedings. Specifically, Katherine B. asserts 1) the ALJ failed to address SSR 16-3p and did not consider Plaintiff's subjective statements regarding her symptoms; and 2) the ALJ failed to consider the side effects of Plaintiff's medication. [Dkt. 9 at 3.] The Court will constrain its consideration to these two alleged claims.

### A. Failure to articulate SSR 16-3p application in assessment of Plaintiff's symptoms

Katherine B. contends that the ALJ did not articulate a sufficient explanation under the SSR 16-3p two-step analysis for the evaluation of the Plaintiff's subjective statements about her symptoms. [Dkt. 11 at 10.] Under SSR 16-3p, "[f]irst [the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." S.S.R. 16-3p. Once established, then the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *Id.*

SSR 16-3p rescinded SSR 96-7p, effective on March 28, 2016, and now requires that an ALJ assess a claimant's subjective symptoms but not her credibility. *Id.* The "change in wording is meant to clarify that [ALJ's] aren't in the business of impeaching claimants' character; obviously [ALJ's] will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of

6

medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original); *see also Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) (noting that an ALJ erred in "her belief that complaints of pain, to be credible, must be confirmed by diagnostic tests."). At stage two of the SSR 16-3p analysis, the ALJ considers the claimant's alleged symptoms in light of the frequency and intensity of pain, aggravating factors, the effectiveness of treatment, and the claimant's daily activities. *Wadsworth v. Astrue*, No. 1:07-cv-0832-DFH-TAB, 2008 WL 2857326, at *7 (S.D. Ind. July 21, 2008). The Court must give the "ALJ's credibility finding 'special deference' and will overturn it only if it is 'patently wrong.'" *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)). In fact, "[c]redibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) (quoting *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)).

   The ALJ found that Katherine B.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [Dkt. 7-2 at 17.] The ALJ "[m]indful that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone" considered Katherine B.'s subjective statements under the regulatory factors of SSR 16-3p. [Dkt. 7-2 at 17.] Though the ALJ found evidence Katherine B. did suffer from chronic myelogenous leukemia, the ALJ noted that Plaintiff declined treatment plan options of a bone marrow transplant or an available clinical trial and elected to take a daily chemotherapy drug. [Dkt. 7-2 at 17.] The ALJ identified

progress notes that reported Katherine B. responded to the anticancer therapy with only one adjustment made in her over all treatment plan since her initial diagnosis in December 2014. [Dkt. 7-2 at 17.] The ALJ then considered Katherine B's statements that her pain from the chemotherapy drug and residual degenerative disc disease was controllable with use of Fentanyl patches and prescribed Tens Unit. [Dkt. 7-2 at 17.]

      The ALJ acknowledged, in her decision, medical evidence that Plaintiff had no documented motor and/or neurological deficits, had body system functioning within normal limits, had negative diagnostic results present in MRIs of the spine, had physical examinations that showed no significant focal swelling and were found to be within normal limits, had normal neurological functioning, had intact gait and station, and had no hospital admissions or use of oxygen to treat COPD. [Dkt. 7-2 at 17-18.] Despite the ALJ's findings of substantially weighted medical evidence not entirely consistent with Plaintiff's subjective statements, the ALJ acknowledged Katherine B.'s "mild to moderate degenerative changes" due to her past wrist fractures by intentionally including a handling/fingering restriction to "account for her subjective complaints and to conform to the radiograph findings." [Dkt. 7-2 at 18.] The ALJ also considered Plaintiff's COPD diagnosis, despite continued smoking, by including a restriction to exposure to respiratory irritants. [Dkt. 7-2 at 18-19.]

      Katherine B. alleges the ALJ "ignored the fact that at least twice during the 46 minute hearing [the Plaintiff] asked to stand up because she was in pain and needed to adjust her position." [Dkt. 9 at 16.] Plaintiff contends the ALJ failed to consider her subjective testimony that she is unable to sit or stand for more than thirty minutes at a time. [Dkt. 9 at 16.] The ALJ listed this plaintiff statement among other exertion symptoms she considered under SSR 16-3p,

8

such as Brown stating she could only walk for short distances and being unable to lift most heavy objects. [Dkt. 7-2 at 17.] Upon consideration of Plaintiff's complaints of pain, the ALJ referenced progress notes in which medical evidence supported a finding that Plaintiff "remained fully active in carrying out all pre-disease performance without restriction" and placed great weight in medical experts' assessments found in the record. [Dkt. 7-2 at 19.] The ALJ weighed testimony of Dr. Lee Besen, a neutral medical expert, who found "claimant was not functionally impaired by her comorbidities" and no "worsening or objective findings supportive of disability" were present, along with state and psychological consultations who provided clinical assessment consistent with the record. [Dkt. 7-2 at 19.] "It is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation." *Flener v. Barnhart*, 361 F.3d 442, 447-48 (7th Cir. 2004). The burden to provide medical evidentiary support to coincide with Plaintiff's subjective statements regarding her pain and "severity of [her] impairments remains with the claimant." *Id.* at 448. Aside from the Plaintiff's own testimony regarding problems sitting or standing for limited periods of time, the ALJ provided insight to her decision by examining medical support in the record that "suggest[ed] a greater sustained capacity than described in testimony." [Dkt. 7-2 at 19.]

      Only when the ALJ's decision does not articulate support or explanation, is the Court required to find the decision "patently wrong." *See Tunnell v. Berryhill*, No. 1:17-cv-2275-WTL-MJD (S.D. Ind. May 31, 2018); *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2009). The ALJ has discretion to "discount the applicant's testimony on the basis of the other evidence in the case." *Johnson v. Barhart*, 449 F.3d 804, 805 (7th Cir. 2006). Here, the ALJ considered the medical testimony of Dr. Lee Besen, State agency medical consultants' and psychological

9

consultants' assessments, the Plaintiff's subjective statements, and a third party report from Plaintiff's spouse as evidence within the record to conduct a SSR 16-3p analysis. [Dkt. 7-2 at 19.] The ALJ must "provide some glimpse into [her] reasoning," and has provided such supported reasoning in this case to "build an accurate and logical bridge from the evidence" to reach her conclusion. *Dixon*, 270 F.3d at 1176.

### B. Dismissal of Plaintiff's allegations of medication side effects

Katherine B. also asserts the ALJ failed to properly assess the side effects of her medications, which she attributed to causing fatigue, urinary incontinence, nausea, and gastrointestinal distress. [Dkt. 9 at 17.] Under SSR 16-3p, the ALJ must use factors in 20 CFR §§ 404.1529(c)(3) and 416.929(c)(3), which includes weighing "the side effects of any medication an individual takes or has taken to alleviate pain or other symptoms." S.S.R. 16-3p. The ALJ acknowledged Plaintiff's prescriptions by considering progress notes that show that, although "symptoms have waxed and waned and [Katherine B.'s] prescriptions have been adjusted to accommodate her subjective complaints . . . typically, she reports stabilization of pain with prescribed treatment." [Dkt. 7-2 at 18.] The ALJ specifically discussed Plaintiff's subjective complaints of fatigue, nausea, and gastrointestinal distress but found physician examinations of Plaintiff that determined her functioning was within normal limits. [Dkt. 7-2 at 18.] "Notably, the claimant has indicated the ability to perform activities of daily living with prescribed treatment." [Dkt. 7-2 at 18]. Katherine B.'s medication compliance history showed a period of more than one week where she failed to take medications as well as failure to follow a pain clinic narcotic agreement; each of which can be taken into consideration by the ALJ to evaluate whether "symptom intensity and persistence affect the ability to perform work-related

10

activities for an adult." [Dkt. 7-2 at 18]; *see also* S.S.R. 16-39. The ALJ addressed Plaintiff's alleged symptoms of urinary incontinence and found that while raised at her hearing, "she consistently denied urinary symptoms to her treating providers." [Dkt. 7-2 at 18.]

Katherine B. contends the ALJ made "no findings or conclusions as to the impact [her complained side effects] has on her ability to work." [Dkt. 9 at 17.] The ALJ did limit the Plaintiff's ability to "light work" with restrictions. [Dkt. 7-2 at 20-21.] The Plaintiff contends the ALJ failed to "develop the record concerning the side effects of each medication [she] was prescribed on her ability to work." [Dkt. 9 at 20.] However, the ALJ "need not evaluate in writing every piece of testimony and evidence submitted," but must only "build an accurate and logical bridge" to consider evidence and form her conclusion. *Carlson*, 999 F.2d at 181 (citing *Stephens*, 766 F.2d at 287); *see also Dixon*, 270 F.3d at 1176. Here the ALJ articulated her consideration of Plaintiff's complained side effect symptoms along with inconsistent medical evidence to form a reasoned conclusion that Katherine B. was not disabled under a SSR 16-3p analysis.

## V.   Conclusion

The standard of review of the Commissioner's denial of benefits is narrow. The Court reviews the record as a whole, but does not re-weigh the evidence or substitute its judgment for the ALJ's. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The Court must uphold a decision where, as here, it is supported by substantial evidence in the record. As the Court cannot find a legal basis to overturn the ALJ's determination that Katherine B. does not qualify for disability benefits, the Court recommends that the Commissioner's decision be **AFFIRMED.**

**Notice Regarding Objections**

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto.  28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2).  A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made.  28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3).  Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed.  *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011).

Dated:  8 AUG 2018

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov

Christie O'Brien Tate
SOCIAL SECURITY ADMINISTRATION
christie.tate@ssa.gov